IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

FILED
APR 1 4 2014
U.S. DISTRICT COURT-WVND
CLARKSBURG, WV 26301

KBS PREOWNED VEHICLES, LLC,
a West Virginia limited liability company,
    Plaintiff,

v.    Civil Action No. 1:13 CV 138

REVIVA, INC., a foreign corporation, and
UNITED FINANCIAL CASUALTY COMPANY,
a foreign corporation also known as Progressive,
    Defendants.

## MEMORANDUM OPINION AND ORDER DECIDING DOCKET ENTRY 47

### I.
### Facts

This is an action in which Plaintiff seeks damages from Defendants for alleged failure to properly repair Plaintiff's 2003 International Truck[1] and alleged failure to properly and timely adjust Plaintiff's insurance claim arising out of a May 9, 2011 engine compartment fire in that truck.

The action was initiated in State Court and removed to this Court effective May 6, 2013 (DE 1, 2, 3, and 5). A scheduling order was entered by the District Judge on July 17, 2013 setting trial in the case for August 19, 2014, setting close of discovery by March 31, 2014, and setting the motions due date for April 30, 2014 (DE 15). By summary order dated July 25, 2013 the District Judge bifurcated Counts 3, 4 and 5 from the remaining counts of Plaintiffs' complaint[2] and stayed

---

[1]Plaintiff's amended complaint (DE 23-1) generally alleges that post fire in the engine compartment of a 2003 International Truck, an inferior Reviva motor was twice installed in the fire damaged truck at the insistence of United resulting in downtime type damages and United refused to pay for repairs to a wiring harness resulting in downtime damages and costs of repair.

[2]Count 3 alleges "Breach Of The Implied Covenant Of Good Faith And Fair Dealing" against United. Count 4 alleges "Unfair Claim Settlement Practices" against United. Count 5 alleges "'Hayseeds' Claim" against United. Count 1 alleges "Breaches Of Contract & Warranty" against Reviva. Count 2 alleges "Breach Of Contract" (the insurance contract) against United.

discovery as to the bifurcated Courts (DE 17).

Plaintiff filed "Preliminary Expert Witness Disclosure November 14, 2013 (DE 35) disclosing John G. Barnes of Barnes & Associates, Inc. as an expert witness. January 7, 2014 Defendant United Financial Casualty Company (hereinafter referred to as "United") filed the subject "Motion To Strike Plaintiff's Expert" (DE 47). Plaintiff filed its Response January 21, 2014 (DE 63). United filed its Reply January 28, 2014 (DE 66).

The parties filed a Joint Motion to Amend/Correct Scheduling Order March 25, 2014 (DE 81) seeking a four month extension in discovery. The extension sought would extend close of discovery from March 31, 2014 to July 31, 2014; and would impact the District Judge's trial date and all pretrial dates following close of discovery set by the District Judge in the Scheduling Order (DE 15).

By Order dated march 25, 2014 the District Judge specifically referred DE 47 and generally referred "any discovery request or subsequent non-dispositive pretrial motions filed in the case" to the undersigned magistrate judge (DE 82).

Since DE 81 was filed before the referral order, is not a "subsequent non-dispositive pretrial motion" or a discovery request which is in dispute, and is a motion which would affect the District Judges' trial calendar if granted, the undersigned magistrate judge will not consider it.

## II.
## Contentions of the Parties

United:
1) Plaintiff's expert witness disclosure "is wholly insufficient and fails to comply with the express requirements of Rule 26(a)(2)(B) and this Court's Scheduling Order." (DE 47, p. 2, pp. 4).

2) "Plaintiff's alleged expert is not qualified by knowledge, experience, or training and expertise under Fed.R.Civ.P. 702 in the areas of insurance and claims adjustment and, therefore, Plaintiff's disclosure should be stricken and Plaintiff's purported 'expert' should be excluded from testifying as such in this matter." (DE 47, p. 2, pp. 5).

Plaintiff:

1) "Plaintiff has fully complied with disclosure requirements contained in Federal Rule of Civil Procedure 26(a)(2) as well as the Scheduling Order." (DE 63, p. 1, pp. A.)

2) "The Plaintiff's Expert John Barnes, is qualified to give expert opinions in this case pursuant to Federal Rule of Evidence 702." (DE 63, p. 4, pp. B).

### III.
### Law

F.R.Civ.P. 26(a)(2)(B) requires :

Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report - prepared and signed by the witness - if the witness is one retained ... to provide expert testimony in the case .... The report must contain:
  (i)   a complete statement of all opinions the witness will express and the basis and reasons for them;
  (ii)  the facts or data considered by the witness in forming them;
  (iii) any exhibits that will be used to summarize or support them;
  (iv)  the witness's qualifications, including a list of all publications authored in the previous 10 years;
  (v)   a list of all other cases in which during the previous 4 years, the witness testified as an expert at trial or by deposition, and
  (vi)  a statement of the compensation to be paid for the study and testimony in the case.

F.R.Civ.P. 26(b)(4)(A) provides:

A party may depose any person who has been identified as an expert whose opinions may be presented at trial. If Rule 26(a)(2)(B) requires a report from the expert, the deposition may be conducted only after the report is provided.

F.R.Civ.P. 26(e)(1)(A) and (B) provides:

A party who has made a disclosure under Rule 26(a) - or who has responded to an interrogatory, request for production, or request for admission - must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or (b) as ordered by the Court.

F.R.Civ.P. 37(c)(1) provides:

*(1) Failure to Disclose or Supplement*

If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and *after giving an opportunity to be heard:*

(A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
(B) may inform the jury of the party's failure; and
(C) may *impose other appropriate sanctions*, including any of the orders listed in Rule 37(b)(2)(A) (i)-(vi). (emphasis added by the undersigned magistrate judge).

F.R.E. 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

## IV.
## Issues Presented

United's motion poses three general questions:

A) Is Plaintiff's Preliminary Expert Witness Disclosure and accompanying information (DE 35) sufficient under F.R.Civ.P. 26(a)(2)(B)?

B) If it is not sufficient, is the appropriate remedy that "Plaintiff's disclosure should be stricken and Plaintiff's purported 'expert' should be excluded from testifying as such in this matter?"

C) Is Plaintiff's disclosed expert qualified to express opinions under Rule 702?

# V.
# Discussion

A) Sufficiency of the Disclosure

The sufficiency of the expert disclosure report is properly before the magistrate judge.

Plaintiff filed a preliminary expert witness disclosure (DE 35). The disclosure identifies John G. Barnes as the expert. John G. Barnes' "Preliminary Report" is attached to the disclosure (DE 35-1 and 35-2). In the report Barnes discloses he is being paid $125.00 per hour (DE 35-2, p. 3). The preliminary report is signed by John G. Barnes (DE 35-1, p. 7).

Based on what Barnes titles "Expert Witness Introduction", he describes himself as an expert in the following fields (DE 35-2, p. 2):

1. "the standards of care in the trucking industry and the operational safety of motor carriers."

2. "commercial trucking insurance underwriting, conduct of managing general agents and truck insurance coverage forms."

3. "The repair, maintenance and adjusting losses on commercial vehicles."

Barnes submitted a list of materials reviewed in his report (DE 35-2, p. 3).

Barnes states he has no publications, identifies one case in which he has testified, identifies three cases in which he has given deposition testimony, and provided a retained case list as part of his report (DE 35-2, p.3-5).

Barnes also provides a curriculum vitae as part of his report (DE 35-2, p. 5-8).

Accordingly and without expressing any opinion on whether the aforementioned disclosures in the report qualify Barnes as an expert or as an expert qualified to render the opinions he seeks to

offer, the undersigned finds those disclosures within the report satisfy the requirements of (iv), (v), and (vi) of F.R.Civ.P. 26(a)(2)(B).

Consideration is next be given to whether Barnes' report satisfies requirements (i), (ii) and (iii) of F.R.Civ.P. 26(a)(2)(B).

From the preliminary report the undersigned has been able to identify 5 separate opinions Barnes proposes to make which, whole or in part, may be relevant to counts 1 and 2[3] of the complaint:

1)  First, United failed to "provide timely and complete handling of the claim."

   In support[4] of this opinion the undersigned ferreted out the following from the report:

   a.  Barnes provided a detailed time line of 31 separate incidents spanning the period from the May 9, 2011 fire loss to an August 2013 report of additional Reviva Engine problems (DE 35-1, p. 1-2).

   b.  Barnes referred to the time line as showing lengthy delays he says were caused by United's claims handling and Reviva' engine problems (DE 35-1, p. 1-2).

   c.  Barnes stated that it is essential for a large insurance company like United to total the truck or get it back on the road and states the importance to KBS because of the truck in question was a "specialized four car hauler and temporary rental units are not available" (DE 35-1, p. 3).

   d.  Barnes stated that, based on his experience in the truck industry, all insurance

---

[3]The trial judge bifurcated counts 3, 4, and 5 and therefore the undersigned will not consider those counts or the sufficiency of Barnes' report relative to opinions he may want to offer relative to those counts.

[4]Ferreted from the whole content of the report. Not identified by the report as being relevant to this particular opinion.

            companies settled their physical damage claims quickly

                i.      by sending an adjuster to look at the vehicle within a few days of the loss,

                ii.     by promptly ordering parts if the vehicle is to be repaired, and

                iii.    by promptly scheduling the repairs.

2)     Second, United's decisions negatively impacted the insured well beyond the costs associated with the original claim.

In support[5] of this opinion the undersigned ferreted out the following from the report:

a.     Barnes explained that the trucking business is a "very narrow margin business".

b.     Barnes explained that having a truck broke down for so long with continuous problems results in loss of income from the use of the truck and damage to KBS.

3)     Third, United's failure to provide timely and complete handling of the claim and failure to restore the truck to its pre-loss physical condition were breaches of provisions of their insurance contract with KBS.

In support of this opinion[6], Barnes refers to clauses or portions of clauses found on pages 22, 23, and 25 of the policy of insurance (DE 35-1, p. 3).

In further support of this opinion, Barnes refers to sections of 114CSR14 West Virginia Legislative Rule Insurance Commissioner Series Unfair Trade Practices (DE 35-1, p. 4-7).

4)     Fourth, Reviva provided a defective engine.

---

       [5]Ferreted from the whole content of the report. Not identified by the report as being relevant to this particular opinion.

       [6]Ferreted from the whole content of the report. Not identified by the report as being relevant to this particular opinion.

In support of this opinion[7], Barnes offers:

> In my expert opinion there were major quality issues in the engine supplied by Reviva. In my career I operated trucks that had engines replaced. I have never seen a series of breakdowns like this. The Reviva rebuilt engines are flawed and their quality processes are in question. (DE 35-1, p. 6)
> The Reviva engine installed on August 3, 2011 and by August 10, 2011 it already had a stuck valve. In December 2011 a burst of back pressure damaged radiator and the fan clutch. In February 2012 there was another series of problems. First, there were sensor failures. Second, there was coolant in the oil. In April 2012 the engine is shipped back to Reviva for inspection. A different engine was shipped on April 19, 2012. By June 2012 that engine apparently had sensor failures costing over $3000 to repair. Reviva refuses to pay this warranty claim. The Reviva engine began to leaking oil and cause damage to the wiring harness. The oil damage was in addition to the underlying fire damage to the electrical system causing the truck to become inoperable again. (DE 35-1, p. 6-7).

5) Fifth, "In my expert opinion electrical and vehicle fires can cause substantial seen and unseen damage." (DE 35-1, p. 6).

In support of this opinion[8], Barnes states:

> In my 30 years of experience I have operated numerous trucks with ECM's (engine control modules) and body controllers. The systems are complex and need to be carefully maintained and can be easily damaged in a fire. I have seen every kind of failure of these components. The level of damage which supported by timeline shows the problems were nearly impossible to correct. The repairs and down time are very costly. Even the smallest damage to a connector can send 'ghost' signals to the ECM or Body Controller resulting in breakdowns and problems. (DE 35-1, p. 6).
> It is my expert opinion the truck has experienced a series of electrical problems caused by the original fire that were never completely repaired. (DE 35-1, p. 6).

Throughout his report Barnes relies on facts within the time line to support his opinions. For instance, he states:

    a.    "This truck should not have taken nearly 90 days to repair." (DE 35-1, p. 5).

---

[7]Ferreted from the whole content of the report. Not identified by the report as being relevant to this particular opinion.

[8]Ferreted from the whole content of the report. Not identified by the report as being relevant to this particular opinion.

b. "United Financial had received notice of the claim on May 9, 2011. A suitable engine found by May 27, 2011 but was rejected by United Financial. It was day 32 before an engine was quoted to Diesel Cranks. It was day 59 before the engine was shipped and installed on day 86." (DE 35-1, p. 5).

The purpose behind requiring expert reports under Rule 26(a) is: the elimination of unfair surprise to the opposing party and the conservation of resources." Sylla-Sawdon v. Uniroyal Goodrich Tire Co., 47 F.2d 277, 284 (8th Cir. 1995). Another reason behind the requirement of reports is that such reports may reduce the extent or eliminate the need for depositions. This is supported by the fact that the committee in writing the rule established that the deposition of the expert was not to be taken until after the report has been served. F.R.Civ.P. 26(b)(4)(A). See also Smith v. State Farm Fir and Cas. Co., 164 F.R.D. 49, 53 (S.D.W.Va. 1995). The Advisory Committee Notes on the 1993 Amendment to Rule 26 explain: "[t]his paragraph imposes an additional duty to disclose information regarding expert testimony sufficiently in advance of trial that opposing parties have a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." Shumaker v. West, 196 F.R.D. 454, 456 (S.D.W.Va. 2000). The undersigned commented on the reasoning behind the requirements of the rule in Kittle v. Peuker, 2002 WL 34364924 (N.D.W.Va. 2002): "The Rule was designed to reduce the cost and expense of litigation by providing early and detailed disclosure of experts, their opinions, and the basis and background for the opinions of the experts, thereby potentially reducing the need to take expensive expert witness depositions. Failure of the plaintiffs to provide the required Rule 26(a)(2) disclosures frustrates the underlying purpose behind the Rule. In addition, in the absence such disclosure, the party examining such expert witness, whether at pretrial deposition or at trial, is placed at a disadvantage because he or she does not have the information required in order

to examine the expert's qualifications or to challenge the bases or methodology in reaching opinions."

The rule requires "[a] complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; ...." Frye v. Hanson Aggregates PMA, Inc., 2006 WL 5349211 (S.D.W.Va. 2006).

"The test of whether a report is sufficiently complete and detailed to be in compliance with the rules is if surprise is eliminated, unnecessary depositions are avoided and costs reduced." Chambers v. Nationwide Mut. Ins. Co., 2002 WL 34364960 (N.D.W.Va. 2002). The magistrate judge in Reed v. Binder, 165 F.R.D. 424, 428 (D.N.J. 1996) explained a complete statement of all opinions meant "'how' and 'why' the expert reached the conclusions and opinions to be expressed" (FN 5) and explained the data and information considered meant "'what' the expert saw, heard, considered, read, thought about or relied upon in reaching the conclusions and opinions to be expressed." (FN 6).

In the instant case Plaintiff refers to his expert's report as "Preliminary Expert Witness Disclosure." Support that Plaintiff and the expert intended the report to be "preliminary" is found in the following language from the expert's "Disclosure": "As I examine additional materials and perform my analyses I reserve the right to revise and supplement my opinions." (DE 35-2, p. 1). The rule does not provide for a preliminary report. A preliminary report has been held to be insufficient. Smith v. State Farm Fir and Cas. Co., *supra*. In Smith the two page reports the magistrate judge reviewed were considered by her insufficient for detail, not insufficient because of the number of pages.

If Barnes' report is complete, it matters not that he calls it "preliminary". The fact is that

Barnes has a right and a duty under F.R.Civ.P. 26(e)(1)(A)and (B) to "supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or (b) as ordered by the Court."

However, on review of each of the five (5) identifiable opinions Barnes reports he is prepared to make, the undersigned finds the report incomplete with respect to the requirements of F.R.Civ.P. 26(a)(2)(B)(i)(ii)and (iii).

In general, with respect to the opinions and the materials the undersigned identified as possibly supporting them, the undersigned was forced to read and re-read the report and materials with it in order to ferret out the information.

It is not organized by identified opinion, the reasoning and basis for the opinion, the marshaled facts and or data that support the reasoning , basis for the opinion, the things Barnes thought about in reaching the opinion, and the exhibits he proposes to use in support of the opinion.

In short, Barnes report provided a shotgun blast of material leaving the undersigned and the Defendant to sort out which pellet matched which opinion. He did not provide a single bullet or bullets pointing toward "how" and "why" he arrived at each opinion. This approach leaves the undersigned and Defendant to guess as to what facts, what insurance clause, what exhibits go to what opinion.

As Plaintiff objects to this memorandum opinion and order, it is predictable that Plaintiff will in part contend that the undersigned missed valuable facts that were in the materials supporting the opinions, misstated the opinions, and erroneously applied facts to opinions. That only supports the conclusion that the report is incomplete. It supports the assertion that the undersigned had to "hunt

and peck" to find it. The report does not reduce costs or eliminate the need for depositions. It doesn't clarify the claims made. It even fails to clearly identify the opinions Barnes is prepared to make.

If the undersigned has correctly identified an opinion Barnes is prepared to make as: United failed to provide timely and complete handling of the claim, at a minimum, the following is left unanswered by the report:

    a.    What were the delays, the length of the delays, dates of each delay that resulted in a lack of timeliness?

    b.    What facts support each claim of a delay?

    c.    What documents in or out of the 31 item list support each finding of delay?

    d.    What does Barnes point to in the contract of insurance, in the industry, in the regulations, in his training and experience that support an opinion the delay claimed was a delay that was unnecessary or a violation of some standard?

    e.    Does the expert attribute delays to Reviva and United, individually or jointly?

    f.    What data, statistics or other evidence does Barnes use in support of his claim that in the truck industry physical damage claims are settled quickly?

    g.    What is the quantitative basis behind the word "quickly?" What does quickly mean?

    h.    What date does Barnes use in his analysis for the adjuster looking at the vehicle as opposed to the date the adjuster actually looked at the vehicle?

    i.    What if any standard does Barnes rely on in reaching the conclusion that the adjuster was delayed in looking at the vehicle?

    j.    What date does Barnes use in his analysis when the parts should have been ordered as opposed to the date when parts were ordered?

k. What if any standard does Barnes rely on in reaching a conclusion that parts were ordered later than they should have been?

l. What date does Barnes use in his analysis for determining when repairs are "promptly" scheduled?

m. What if any standard does Barnes rely on in reaching the conclusion that repairs were not promptly scheduled?

n. Are there national or regional or industry standards for how long a repair of a truck engine compartment fire should take?

If the undersigned has properly identified an opinion Barnes is prepared to make as: United's decisions negatively impacted the insured well beyond the costs associated with the original claim, at a minimum, the following is left unanswered by the report:

a. What if any facts, materials, industry publications, industry statistics support the conclusion that the trucking business is a very narrow margin business?

b. What is a "very narrow margin business"?

c. What did Barnes review and use to determine that KBS fell in to the category of a trucking business with a very narrow margin? What was KBS's pre-damage margin vs. its post-damage margin?

d. How did Barnes arrive at the conclusion that having a truck broke down for so long caused KBS financial problems?

e. Did Barnes do any analysis of KBS's books in the formulation of this opinion?

f. What decisions by United negatively impacted the insured?

g. How did each identified decision by United negatively impact KBS.

If the undersigned has properly identified an opinion Barnes is prepared to make as: United's

failure to provide timely and complete handling of the claim and failure to restore the truck to its pre-loss physical condition were breaches of provisions of their insurance contract with KBS, at a minimum, the following is left unanswered by the report:

 a. What specific provisions of the insurance contract does United's handling of the claim and or failure to restore the truck to its pre-loss physical condition breach?

 b. How is each of the identified insurance contract clauses breached by what action or combination of actions or inactions by United? What are the facts supporting that opinion?

 c. How or Why does a breach of an insurance regulation mean an opined breach of the insurance contract has occurred?

 d. What insurance regulations did Barnes consider in concluding there was a breach of contract by United?

If the undersigned has properly identified an opinion Barnes is prepared to make as: Reviva provided a defective engine, at a minimum, the following is left unanswered by the report:

 a. How did Barnes reach the stated opinion: "there were major quality issues in the engine supplied by Reviva and Reviva rebuilt engines are flawed and their quality processes are in question"?

 b. What are the facts Barnes used, the data you used, the materials you used to opine : "there were major quality issues in the engine supplied by Reviva and Reviva rebuilt engines are flawed and their quality processes are in question"?

If the undersigned has properly identified an opinion Barnes is prepared to make as: electrical and vehicle fires can cause substantial seen and unseen damage and the truck has experienced a series of electrical problems caused by the original fire that were never completely

repaired, at a minimum, the following is left unanswered by the report:

    a.    How did Barnes reach these two opinions?

    b.    How did Barnes determine the electric problems caused by the fire had not been repaired?

B)    Having determined the disclosure is not sufficient, is the appropriate remedy that it should be stricken and Barnes should be excluded from testifying as such in this matter?

Guidance is found in the following case decisions:

> Sullivan v. Glock, Inc., 175 F.R.D. 497, 506-508, (D. Md. 1997)in determining whether or not the automatic exclusion provisions of Rule 37(c)(1) should be applied to exclude expert testimony, the court should consider four factors in assessing whether there was substantial justification for the failure to disclose or harmlessness to the opposing party: (1) *507 the importance of the excluded testimony; (2) the explanation of the party for its failure to comply with the required disclosure; (3) the potential prejudice that would arise from allowing the testimony; and (4) the availability of a continuance to cure such prejudice. _Trilogy Communications, Inc. v. Times Fiber Communications, Inc._, 109 F.3d 739, 744 (Fed.Cir.1997). With respect to the first factor, the court should evaluate whether the expert whose testimony would be excluded is central to the sponsoring party's case, or merely one of several experts who will testify to the same point. If exclusion of the testimony would be fatal to the sponsoring party's case, there is authority which suggests that it would be abuse of discretion to exclude the evidence. _Orjias v. Stevenson_, 31 F.3d 995, 1005 (10th Cir.1994) ("Notwithstanding Rule 37(c), the district court may be found to have abused its discretion if the exclusion of testimony results in fundamental unfairness in the trial of the case"); _Newman v. GHS Osteopathic Inc._, 60 F.3d 153, 157 (3rd Cir.1995) (same).

> With respect to the second factor, the court should take into consideration the reason for the failure to make the disclosure. The court may consider, for example, the experience of counsel, and whether the failure to provide appropriate disclosures was willful or in bad faith as opposed to inadvertent or the result of inexperience. The court might consider whether any of the confusing circumstances discussed above were involved; whether opposing counsel wrote to request the required disclosure or protest the adequacy of the disclosure given; whether the failure was total as opposed to an incomplete disclosure or failure to timely supplement; and whether the information required by the disclosure was provided to opposing counsel by some other discovery method. In this regard, at least one court has recently also taken into consideration the fact that Rule 26(a)(2) disclosures are relatively new. See _Reed v. Binder_, 165 F.R.D. 424, 431 (D.N.J.1996) (declining to bar expert's testimony as sanction for inadequate Rule 26(b)(2)(B) disclosure in part because voluntary

disclosure has not been the rule, and "the court perceives that attorneys practicing before this court have not become completely accustomed to the substantial changes in practice caused by the 1993 amendments to the rules"). In any event, when making its determination, the court should not overlook the fact that Rule 37(c)(1) requires that the reason for nondisclosure constitute *substantial* justification. *See Nguyen v. IBP, Inc.*, 162 F.R.D. 675, 678–82 (D.Kan.1995) ("Substantial justification requires justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request. The proponent's position must have a reasonable basis in law and fact."). *See, e.g., Salgado v. General Motors Co.*, No. 93 C 1427, 1996 WL 535333, at *2 (N.D.Ill. Sept. 19, 1996) (finding that experts' busy trial and travel schedules did not provide substantial justification for party's failure to comply with Rule 26(a)(2)(B)).

The third factor requires the court to consider the potential prejudice to the opposing party if the expert is allowed to testify. Perhaps the most important consideration in this regard is the amount of time remaining before trial. If the issue surfaces months before trial, the court has great latitude to require the disclosure, permit the opposing party to take additional discovery and designate rebuttal experts, and to balance the scales by imposing a lesser sanction, such as awarding costs. *See McNerney v. Archer Daniels Midland Co.*, 164 F.R.D. 584, 586 (W.D.N.Y.1995) ("Now that plaintiff has submitted most of the components of the required report, any prejudice to defendant can be remedied by granting leave to defendant to depose the expert outside the discovery period [and costs] associated with obtaining compliance with that rule."). Where, however, the issue surfaces on the eve of trial, or worse yet, during the trial, the court's options are far more restricted. In this regard, it must be acknowledged that injecting expert discovery into the final stages of pretrial preparation, or during trial itself, is extremely disruptive as well as expensive. Whether the court is willing to allow this to happen may well be influenced by whether the dispute centers around a complete failure to provide disclosure of the identity or opinions of an expert, as opposed to a claim that the *508 disclosures were incomplete, or that disclosures which were once complete were not supplemented to cover an additional opinion the expert is now being asked to give. Another factor which should be considered is whether the proposed expert testimony will be the subject of a *Daubert* challenge.[FN17] *See Reed*, 165 F.R.D. at 429 n. 9 (noting that "[t]he disclosure requirements of the Rules are also particularly helpful to the court in making rulings limiting or restricting expert testimony pursuant to Evidence Rules 104(a) and 702 and *Daubert*"). If so, then the court will have to consider the disruptive impact which this may have on the trial, because it may have to conduct evidentiary hearings outside the presence of the jury pursuant to Fed.R.Evid. 104(a) to determine whether the proposed expert testimony may be presented to the jury.

FN17. *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

The final factor the court should consider is whether a continuance may be granted to cure the effects of prejudice caused by a failure to disclose, or a late disclosure. Needless to say, if the issue arises months before a scheduled trial date, this remedy is far more palatable than if it arises on the eve of trial. Courts should be mindful that granting a continuance just before a scheduled trial inconveniences not only the attorneys and parties, but also non-party witnesses. Additionally, a court must be careful not to reward the party who failed to make proper disclosures by granting a continuance, a practice which invites abuse.

The United States Court of Appeals for the Fourth Circuit addressed the issue of exclusion of experts under Rule 37(c)(1) in Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592 (4th Cir.2003). The Court noted that the Rule provides two exceptions to the general rule excluding evidence that a party seeks to offer but has failed to disclose properly: (1) when the failure to disclose is substantially justified, and (2) when the nondisclosure is harmless. Id. The Court established a five factor test to be applied in such cases, holding as follows:

FN4. Rule 16(f) provides:

Sanctions. If a party or party's attorney fails to obey a scheduling order or pretrial order, ... the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37(b)(2)(B), (C), (D).

> [I]n exercising its broad discretion to determine whether a nondisclosure of evidence is substantially justified or harmless for purposes of a Rule 37(c)(1) exclusion analysis, a district court should be guided by the following factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non disclosing party's explanation for its failure to disclose the evidence.
> Id. at 597 ( citing Rambus, Inc. v. Infineon Tech. AG, 145 F.Supp.2d 721 (E.D.Va.2001)); see also Luma, 226 F.R.D. at 543-44.

Whether the undersigned uses the 4 factor test in Sullivan v. Glock, *supra*, or the 5 factor test under in Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co., *supra*, a hearing to give the parties the opportunity to be heard is required.

C) United's contention that "Plaintiff's alleged expert is not qualified by knowledge, experience,

or training and expertise under Fed.R.Civ.P. 702 in the areas of insurance and claims adjustment and, therefore, Plaintiff's disclosure should be stricken and Plaintiff's purported 'expert' should be excluded from testifying as such in this matter" (DE 47, p. 2, pp. 5) is a veiled *Daubert* challenge.

In the time the undersigned has been on the bench serving the District Judge assigned to this case and the people of the Northern District of West Virginia (May 1999 to present), the District Judge has not once referred a *Daubert* challenge for decision. That is because the District Judge is the "trial judge" and is in control of how the trial will be conducted including but not limited to whether a given witness is qualified to render expert opinion evidence. The undersigned magistrate judge is not the trial judge in this case as no consent was given by the parties.

The Supreme Court in <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993) charged trial judges with the responsibilities of acting as gatekeepers to exclude unreliable expert testimony. In <u>Kumho Tire Co. V. Carmichael</u>, 119 S.Ct. 1167, 1168 (1999) the Court extended the gatekeeper function of the trial judge from scientific expert testimony to all expert testimony.

Moreover, a ruling on Defendant's challenge is pre-mature for two reasons: 1) It may be rendered moot by a final ruling the undersigned may make with regard to the appropriate remedy to be imposed as a result of Plaintiff's failure to provide a sufficient expert witness report. 2) It may go to the bifurcated "bad-faith" claims.

Accordingly, the undersigned will not render any opinion as to whether Plaintiff's disclosed expert is or is not qualified by knowledge, experience or training and experience under Fed. R.Civ. P. 702 in the areas of insurance and claims adjustment. That is left for the District Judge if and when a properly identified *Daubert* challenge is filed.

## Order

Based on the foregoing analysis, the undersigned magistrate judge finds and concludes Plaintiff's expert disclosure report (the Barnes' Report) is not sufficient. An evidentiary hearing and argument is set for April 28, 2014 at 1:00 p.m. at the Clarksburg Point of Court on the issue of the appropriate remedy to be imposed considering the factors outlined in: Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co. and Sullivan v. Glock, Inc.

The Clerk is directed to provide electronic notice of filing of this order to all counsel of record and to not remove DE 47 from the docket of motions pending before the Court.

It is so **ORDERED**.

Dated: April 14, 2014

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE